**Mark R. HUSTON, Appellee,**

v.

**THOMAS SHOWS, INC., Appellant.**

**No. 78–1266.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Nov. 9, 1978.

William P. O'Brien (on brief) of Hanft, Fride, O'Brien & Harries, Duluth, Minn., argued, for appellant.

Harry L. Munger (on brief) of MacDonald & Munger, Duluth, Minn., argued, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and HANSON,* Senior District Judge.

STEPHENSON, Circuit Judge.

The primary issue on appeal is whether the trial court erred in entering judgment on the jury's verdict which included incon-

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

sistent answers to interrogatories. We hold that the court erred, and reverse and remand for a new trial.

The basis for error is found in the following questions submitted to the jury and the jury's answers:

1. What amount of money would fairly, fully, and adequately compensate Mark Huston for his injuries?

$56,000

NEGLIGENCE

2. Was defendant Thomas Shows, Inc. negligent in the manner in which it conducted its operation at the time and place in question?

Answer "Yes" or "No"    yes

If your answer to question 2 was "Yes" answer question 3.

3. Was such negligence a direct cause of the injuries sustained by plaintiff Mark Huston?

Answer "Yes" or "No"    yes

AGENCY

4. Under the instructions given to you by the Court and the facts in this case as you find them, were the activities of Sanders giving rise to the altercation related to his duties as an employee?

Answer "Yes" or "No"    yes

5. Did said altercation occur within work-related limits of time and place?

Answer "Yes" or "No"    yes

6. Under either of the above theories, did the conduct of the plaintiff amount to negligence?

Answer "Yes" or "No"    yes

If your answer to question 6 was "Yes" answer question 7.

7. Was such negligence a direct cause of his injuries?

Answer "Yes" or "No"    yes

8. Taking all of the fault which contributed to the injuries as equal to 100%, what percentage of fault is attributed to:

| | |
|---|---|
| Plaintiff Mark Huston | 40% |
| Defendant Thomas Shows, Inc. | 60% |
| | 100% |

9. It is the jury's intention by virtue of the foregoing to return a verdict for:

..... the defendant Thomas Shows, Inc.

x   the plaintiff Mark Huston and that he will be awarded $22,400.

1. Thomas Shows also alleges that the trial court erred by submitting question 4 concerning scope of employment inasmuch as there was no evidence upon which a jury could conclude that Sanders' activities were related to his duties as an employee. We find that there was evidence sufficient to allow submission of question 4 to the jury.

The trial court found the answers to questions 1 through 8 to be inconsistent with the answer to question 9 and determined that this inconsistency was the result of an arithmetical error. The court, on the basis of Fed.R.Civ.P. 49(b), entered judgment for the plaintiff for 60% of the total damages in the amount of $33,600, thus entering judgment in accord with the answers to questions 1 through 8, and notwithstanding the answer to question 9.

■ Appellant-defendant Thomas Shows, Inc. appeals, claiming that the trial court erred in submission of question 9 inasmuch as it was inappropriate for inclusion with the "special verdict" questions 1 through 8 and that the resultant verdict was inconsistent.[1]

Before the jury began deliberation, the following discussion took place in the courtroom with reference to question 9:

MR. O'BRIEN: I have never seen it before in this Court or any other Court, and I am looking at it for the first time, and I am wondering when you have a special verdict and then the statute says you instruct on comparative negligence and the effect of the verdict, that's fine—and that the Court has done.

But this next question it seems to me could make for a perverse verdict.

What if the jury says, "Our intentions were different than the answers we have given you"?

THE COURT: Then we'll give a new trial.

That's the whole object of it, is not to have justice by guess work. This is one way to know that the jury understood the instructions and understood what they were doing.

MR. O'BRIEN: But isn't the point of a special verdict to be that the jury answers the factual questions and the Court enters judgment and the Court—

THE COURT: That is the way Oscar Knudsen used to do it when he was chief

justice, but the legislature went back about five years ago and said the judge must instruct as to what the effect is, and all I am asking to do is to see if they did it.

Now the fellow who has argued most about this before in all my career is a guy named Munger.

MR. O'BRIEN: Is he?

MR. MUNGER: (Nods head affirmatively).

THE COURT: And he's argued with me just horribly.

MR. MUNGER: I didn't say a word today.

THE COURT: You haven't said anything today.

But you and Munger aren't the only two fellows that ever objected to it.

MR. O'BRIEN: Well Judge, I have been in front of you many times and I have never seen it, honestly.

THE COURT: Well, no, but don't you think it's nice? If you didn't have something new once in a while—

MR. O'BRIEN: Well, what I am worried about is I can see a possible perverse verdict and retrials coming up. I think, for the record at least at this stage, Your Honor, it would be my obligation to object to question 9 as not being in conformance with the purpose of a special verdict.

THE COURT: I will overrule your objection.

I tell you another thing I do with this now that makes it so nice—

MR. O'BRIEN: Because I get a new trial anyway.

THE COURT: —but at the end of this case all I have to do is look at those percentages and look at the first question while they are still sitting here, and I can see if we've got a perverse verdict, and then I can visit with you fellows and see if it can be straightened out.

MR. O'BRIEN: I just think I have an obligation to make the objection.

When the jury returned with the inconsistent verdict on February 2, 1978, the trial judge was not present. On February 10, 1978, the trial judge, in a memorandum opinion and order, stated that although the verdict form used by the jury was entitled a "Special Verdict," it was, in effect, a "General Verdict Accompanied by Answers to Interrogatories." Thus, the trial judge reasoned, pursuant to Fed.R.Civ.P. 49(b), that it was appropriate to enter a judgment consistent with the answers to the "special interrogatories," questions 1 through 8.

■ The record reflects the intention of the trial court and counsel to be that of submitting a special verdict to the jury. More importantly, the trial court assured counsel a new trial would be granted if the answer to question 9—"the housekeeping question"—was inconsistent with the answers to the special verdict questions, questions 1 through 8. Under these circumstances, we conclude it was improper for the trial court to deny appellant's motion for a new trial. We reverse and remand for a new trial.